874 A.2d 561 (2005)
378 N.J. Super. 8
ENRON (THRACE) EXPLORATION & PRODUCTION BV and ECT Europe Finance, Inc., Plaintiffs-Respondents,
v.
Ann. K. CLAPP, David S. Clapp and Harvey R. Clapp, III, Defendants-Appellants, and
Guy O. Dove, III, Defendant (Two Cases).
Enron (Thrace) Exploration & Production BV and ECT Europe Finance, Inc., Plaintiffs-Respondents,
v.
Ann. K. Clapp, David S. Clapp and Harvey R. Clapp, III, Defendants, and
Guy O. Dove, III, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 25, 2005.
Decided May 31, 2005.
*562 Pitney Hardin, Florham Park, for appellants Ann K. Clapp, David S. Clapp and Harvey R. Clapp, III (Joy Harmon Sperling and Jeffrey S. Mandel, on the brief).
John R. Altieri, Hackensack, for appellant Guy O. Dove, III (Mr. Altieri joins in the brief with Ms. Sperling and Mr. Mandel).
Greenberg Traurig, Florham Park, for respondents Enron (Thrace) Exploration & Production BV, and ECT Europe Finance, Inc. (Roger B. Kaplan, of counsel; Mr. Kaplan and William J. Votta, Woodbridge, on the brief).
Before Judges PETRELLA, LINTNER and YANNOTTI.
The opinion of the Court was delivered by
YANNOTTI, J.A.D.
In these related appeals, we address the question of whether money-judgments issued by courts in foreign nations may be filed with the Clerk of the Superior Court and enforced in New Jersey without a prior judicial determination recognizing the judgments and authorizing their enforcement in this State. The judges below concluded that the Foreign Country Money-Judgment Recognition Act, N.J.S.A. 2A:49A-16 to -24 (FCMJRA), permits the judgments to be filed without prior judicial approval. We agree and affirm.

I.
This dispute arises from an agreement between Thrace Basin Natural Gas (Turkiye) Corporation (TBNG), an entity registered in the British Virgin Islands, and plaintiffs Enron (Thrace) Exploration & Production BV (Enron) and ECT Europe Finance, Inc. (ECT). TBNG is the owner of rights to certain hydrocarbon deposits in the Republic of Turkey and approached Enron to obtain financial and technical assistance to exploit these natural resources. In December 2000, TBNG and Enron entered into a joint venture agreement under which TBNG granted Enron an option to acquire a 55% interest in the deposits in exchange for Enron's agreement *563 to provide a minimum commitment of up to $3,000,000. The contract provides that, upon the occurrence of specified events of default, the non-defaulting party could tender notice immediately terminating the agreement and, if such notice were tendered prior to closing on transfer of the 55% interest, Enron would be entitled to the return of any funds it expended on the project.
Enron also entered into a certain Charge Agreement with defendants Ann K. Clapp, David S. Clapp, Harvey R. Clapp, III and Guy O. Dove, III (defendants), in which defendants agreed to pay Enron any monies due to it from TBNG under the joint venture agreement. The Charge Agreement provides that the courts of England shall have jurisdiction to settle any disputes arising thereunder. In the agreement, defendants waived any objection to the venue of such proceedings in the English courts and further agreed that a judgment in the proceedings shall be "conclusive and binding" and "may be enforced in the courts of any other jurisdiction."
On January 23, 2001, Enron exercised its option under the joint venture agreement to acquire the 55% interest, however, a closing on this acquisition did not occur. Asserting that Enron was in default, on January 11, 2002, TBNG sent Enron a notice immediately terminating the joint venture agreement. On January 23, 2003, Enron demanded from TBNG the monies that it had expended on the project and, on September 3, 2003, Enron insisted that defendants pay it the monies due under the Charge Agreement.
When defendants did not accede to Enron's demand, Enron and ECT (plaintiffs) brought an action against defendants in the High Court of Justice of England and Wales, Queen's Bench Division, at the Royal Courts of Justice in London. In November 2003, defendants filed certain Acknowledgments of Service, which are deemed to constitute appearances in the English court system. However, because they lacked an address for service in the United Kingdom, the Acknowledgements were considered to be of no force and effect and in December 2003, default judgments were entered in the amount of $8,106,543.12 against the Clapp defendants and $8,110,128.82 against defendant Dove.
Plaintiffs forwarded the English judgments to New Jersey counsel, who presented the same for filing with the Clerk of the Superior Court. The Clerk refused to file the judgments until they were presented to and reviewed by a Superior Court judge. Plaintiffs made an ex parte application before a Superior Court judge who entered an order on February 20, 2004 upon which he wrote that judicial approval was not necessary and the judgments could be filed with the Clerk pursuant to the Uniform Enforcement of Foreign Judgments Act, N.J.S.A. 2A:49A-25 to -33 (UEFJA). On February 23, 2004, plaintiffs filed the judgments with the Clerk, who thereupon provided notice of filing to defendants. See N.J.S.A. 2A:49A-28(b)(requiring the Clerk to mail notice "promptly" upon the filing of the foreign judgment).
On March 8, 2004, defendants brought a motion in the English court to vacate the default judgments. Defendants asserted, among other contentions, that the time for defendants to respond to the complaint had not expired when default was entered against them and plaintiffs' claims were without merit. Defendants also moved on March 8, 2004 in the Law Division, Middlesex County, for an emergent stay of execution of the judgments. On March 9, 2004, a temporary stay was granted and the judge scheduled a hearing on defendants' application to vacate the filing and docketing *564 of the English judgments. After hearing argument, the judge entered an order on March 18, 2004 denying the motion and staying enforcement pending resolution of defendants' motion in the English court. Defendants filed separate appeals from the February 20, 2004 and March 18, 2004 orders. We now consolidate the appeals for purposes of decision.
We note that, after the appeals were filed, the English court entered an order which granted in part and denied in part defendant's motion. The court reduced the judgments to $3,900,538. Plaintiffs moved in the Law Division to amend the English judgments that had been previously filed with the Clerk. They also moved to vacate the stay of execution or, alternatively, require defendants to post a bond to secure payment of the judgments. The motion was denied in view of the pendency of these appeals. R. 2:9-1(a).

II.
Defendants first argue that the appeals are moot because the English court granted in part defendants' application to set aside the default judgments. We disagree. "A case is moot if the disputed issue has been resolved, at least with respect to the parties who instituted the litigation." Caput Mortuum v. S. & S., 366 N.J.Super. 323, 330, 841 A.2d 430 (App.Div.2004) (citing DeVesa v. Dorsey, 134 N.J. 420, 428, 634 A.2d 493 (1993) (Pollock, J., concurring), and Oxfeld v. New Jersey State Bd. of Educ., 68 N.J. 301, 303-04, 344 A.2d 769 (1975)). The disputed issue raised in this case is whether plaintiffs are permitted by the FCMJRA to file their English judgments with the Clerk without authorization by a Superior Court judge. Although reduced by order of the English court, the judgments have not been vacated in their entirety and remain on file with the Clerk. Therefore, the issue as to whether the English judgments should have been filed without prior judicial authorization is not moot.

III.
The FCMJRA is New Jersey's version of the Uniform Foreign Money Judgments Recognition Act. Kam-Tech Systems, Ltd. v. Yardeni, 340 N.J.Super. 414, 421, 774 A.2d 644 (App.Div.2001). Because the United States Constitution makes no specific provision for the enforcement of judgments of foreign nations, recognition and enforcement of such judgments has been considered a matter of comity. Id. at 420, 774 A.2d 644 (citing Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1895)). Generally the law governing the recognition of judgments of foreign nations had not been codified. The National Conference of Commissioners of Uniform State Laws accordingly proposed the enactment of uniform legislation, which was thereafter passed and is now in effect in thirty states, with some local variations. Id. at 421, 774 A.2d 644. The FCMJRA provides the statutory basis for enforcing judgments of other nations in New Jersey. Ibid.
The FCMJRA applies to "any foreign country money-judgment that is final and conclusive and enforceable where rendered even though an appeal is pending from it or it is subject to appeal." N.J.S.A. 2A:49A-18. A foreign country money-judgment is not conclusive if
(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) the foreign country court did not have personal jurisdiction over the judgment debtor; or

*565 (3) the foreign country court did not have jurisdiction over the subject matter.
[N.J.S.A. 2A:49A-20(a)].
The FCMJRA additionally provides that a foreign country judgment need not be recognized if, among other reasons, the judgment debtor did not have notice in sufficient time to defend, the judgment was obtained by fraud and the cause of action is contrary to the public policy of this State. N.J.S.A. 2A:49A-20(b)(1),(2) and (3). Furthermore, N.J.S.A. 2A:49A-19 states:
Except as provided in [N.J.S.A. 2A:49A-21], a foreign country money-judgment meeting the requirements of [N.J.S.A. 2A:49A-18] is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign country money-judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.

[Emphasis added].
Judgments entitled to full faith and credit may be enforced pursuant to the UEFJA, which was enacted to relieve "creditors and debtors of the additional cost and harassment of further litigation" with respect to the enforcement of certain "foreign judgments." Assembly Judiciary Committee Statement, to Assembly Bill No. 2220. The UEFJA defines "foreign judgment" to mean "any judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." N.J.S.A. 2A:49A-26.
Under the UEFJA, a copy of any properly authenticated "foreign judgment" may be filed with the Clerk and the Clerk is required to "treat the foreign judgment in the same manner as a judgment of the Superior Court of this State." N.J.S.A. 2A:49A-27. A judgment filed under the UEFJA "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a Superior Court of this State and may be enforced in the same manner." Ibid. The filing procedure under the UEFJA for enforcement of foreign judgments is not exclusive. The UEFJA preserves the right of a judgment creditor "to bring an action to enforce his judgment instead of proceeding" under the Act. N.J.S.A. 2A:49A-31.
Because the FCMJRA expressly provides that a foreign country money-judgment may be enforced "in the same manner" as a judgment that is entitled to full faith and credit, N.J.S.A. 2A:49A-19, a foreign country money-judgment may be enforced by the filing procedure authorized in N.J.S.A. 2A:49A-27, or an action to enforce the judgment as preserved by N.J.S.A. 2A:49A-31. Where, as here, the statute is clear, we must enforce the law according to its terms. Matter of Estate of Post, 282 N.J.Super. 59, 72, 659 A.2d 500 (App.Div.1995) (citing Sheeran v. Nationwide Mut. Ins. Co., Inc., 80 N.J. 548, 556, 404 A.2d 625 (1979)). See also Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998) (stating that when the language is plain and clearly reveals the meaning of the statute, the court must enforce the law as written). Therefore, a foreign country money-judgment may be enforced by filing with the Clerk pursuant to N.J.S.A. 2A:59A-27 without prior judicial recognition.
Defendants argue, however, that the FCMJRA is a statute of recognitionnot enforcement. According to defendants, the Act merely provides a mechanism for recognizing a foreign country judgment whereas the UEFJA allows for simultaneous recognition and enforcement of judgments that are entitled to full faith *566 and credit. Defendants assert that a foreign country judgment may only be recognized if the holder of the judgment makes a motion or files a complaint, with notice to the judgment debtor, seeking a judicial determination that the judgment is "final, conclusive and enforceable" under the FCMJRA.
We are not convinced that the Legislature intended that the FCMJRA would be merely a means to obtain recognition of a foreign country judgment. In the FCMJRA, the Legislature has not expressly required a prior judicial determination recognizing a foreign country judgment. Rather, the Legislature has provided that a foreign country judgment may be enforced "in the same manner" as judgments that are entitled to full faith and credit. N.J.S.A. 2A:49A-19. Because judgments entitled to full faith and credit may be enforced in New Jersey without a prior determination by the Superior Court recognizing those judgments, the same procedure is available for judgments of foreign countries.
Courts in other jurisdictions have reached the same conclusion. In Society of Lloyd's v. Ashenden, 233 F.3d 473 (7th Cir.2000), the defendant challenged the filing of an English judgment and the issuance of process for its enforcement. Id. at 481. The court rejected the assertion that the Illinois Uniform Foreign Money-Judgments Recognition Act, 735 Ill. Comp. Stat. Ann. § 5/12-618 to 626, required plaintiff to file a complaint and secure an Illinois judgment to enforce the judgment of the English court. Writing for the court, Judge Posner stated that, under Illinois law, there was no reason to require the judgment creditor to bring an action to recognize the judgment and another proceeding to enforce it:
Any doubt on this score is dispelled by reading in tandem the statutes governing enforcement of foreign-state and foreign-nation judgments respectively. The Illinois Enforcement of Foreign Judgments Act, which governs the enforcement in Illinois of judgments rendered in the courts of other states of the United States, as distinct from foreign nations, not only treats such judgments the same as Illinois judgments, which means that no separate step of "recognition" is necessary before they can be enforced; the act also makes the foreign judgment enforceable unless the judgment debtor objects and invokes "procedures, defenses, and proceedings for reopening, vacating, or staying" the judgment. This clearly implies that separate "recognition" proceedings are not requiredan interpretation confirmed in cases from other jurisdictions that have adopted the Uniform Enforcement of Foreign Judgments Act .... which governs judgments of courts outside the United States, [and] makes such judgments, if enforceable at all, enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.
[Id. at 481-82].
See also Don Docksteader Motors, Ltd. v. Patal Enterprises, Ltd., 794 S.W.2d 760 (Texas Sup.Ct.1990) (holding that under Texas Uniform Foreign Country Money-Judgments Recognition Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 36.001-.008, judgment of a foreign nation was enforceable either by filing a common law action to enforce the judgment or by the "short cut" filing procedure in the Uniform Enforcement of Foreign Judgment Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 35.001.-.008). Cf. Redondo Construction Corp. v. United States, 157 F.3d 1060, 1065 (6th Cir.1998) (concluding that upon filing pursuant to Kentucky's Uniform Enforcement of Foreign Judgments Act, Ky.Rev.Stat. *567 Ann. § 426.950, et seq., a judgment entered by the United States District Court for Puerto Rico was the equivalent of a Kentucky judgment and there is no requirement that a "Kentucky court rubberstamp the foreign judgment before Kentucky will recognize it as equivalent of a domestic judgment").
Our decision in Kam-Tech Systems, supra, 340 N.J.Super. 414, 774 A.2d 644, does not require a contrary result. In Kam-Tech we affirmed an order enforcing a money-judgment issued by an Israeli court. We held that under the FCMJRA, New Jersey "must recognize" a final foreign country judgment for money damages unless the judgment debtor establishes one of the specific grounds for non-recognition that are enumerated in N.J.S.A. 2A:49A-20. Id. at 423, 774 A.2d 644. Although the judgment creditor in Kam-Tech Systems filed a complaint seeking judgment enforcing the Israeli judgment, that procedure is not mandated by our decision.
In support of their contention that prior judicial authorization is required to enforce a money judgment of a foreign country, defendants rely upon Korea Water Resources Corp. v. Lee, 115 Cal.App.4th 389, 398, 8 Cal.Rptr.3d 853 (Cal.Ct.App.2004). In that case, the court held that the holder of a foreign country money judgment may not apply for immediate entry of the judgment but must first bring an action to obtain a California judgment. However, under California's version of the Uniform Foreign Country Money-Judgments Recognition Act, the holder of the judgment is required to file an action in California to obtain a California judgment. Id. at 398, 8 Cal.Rptr.3d 853 (citing Cal.Code. Civ. Pro. § 1713).
Defendants also rely upon Overseas Development Bank v. Nothmann, 103 A.D.2d 534, 480 N.Y.S.2d 735 (2d Dept.1984), rev'd on other grounds, 64 N.Y.2d 927, 477 N.E.2d 1086, 488 N.Y.S.2d 632 (1985), wherein the court held that under New York's version of the Uniform Foreign Country Money-Judgment Recognition Act, the holder of the foreign country judgment may not file the judgment directly but must first file a complaint or motion and obtain a domestic judgment. Defendant's reliance on this decision also is misplaced because New York's statute expressly requires the judgment creditor to follow that procedure. Id. (citing N.Y.C.P.L.R. § 5303).

IV.
Citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), defendants argue that the filing of the foreign-country judgments with the Clerk pursuant to N.J.S.A. 2A:49A-19, without affording them prior notice and an opportunity to be heard, violates their right to due process of law. We disagree.
In Fuentes, the Court held that pre-judgment seizure of chattels under writs of replevin, issued pursuant to the laws of Pennsylvania and Florida, based on the ex parte application of a person claiming a right of possession, effected a taking of property without due process of law. Fuentes, supra, 407 U.S. at 96, 92 S.Ct. at 2002, 32 L.Ed.2d at 579. Similarly, in Doehr, the Court held that a Connecticut statute authorizing pre-judgment attachment of real property without prior notice and hearing, and without a showing of exigent circumstances, violated due process requirements. Doehr, supra, 501 U.S. at 23, 111 S.Ct. at 2118, 115 L.Ed.2d at 21. However, neither Fuentes nor Doehr apply here because those cases dealt with pre-judgment remedies and the *568 procedure at issue here is a post-judgment process.
In Gedeon v. Gedeon, 630 P.2d 579 (Colo.Sup.Ct.1981), the court rejected a due process challenge to the procedures under Colorado's sister-state judgment act, which allows the entry in Colorado of a sister-state's judgment, without formal notice or an opportunity to be heard. The court held that the filing of the judgment did not violate principles of due process because the "basic requirements of notice and hearing" were met by the state which issued the original judgment. Id. at 582.
We agree with the reasoning of the Colorado court and are furthermore convinced that the reasoning applies with equal force to the judgments entered against defendants by the courts in the United Kingdom. Defendants make no claim that the English courts fail to abide by "basic requirements of notice and hearing." Indeed, the notion that the English courts do not provide impartial tribunals or adhere to fundamental requirements of due process "borders on the risible." Society of Lloyd's, supra, 233 F.3d at 476. "United States courts which have inherited major portions of their judicial traditions and procedure from the United Kingdom are hardly in a position to call the Queen's Bench a kangaroo court." Ibid. (quoting from British Midland Airways Ltd. v. International Travel, Inc., 497 F.2d 869, 871 (9th Cir.1974)).
We therefore conclude that the filing pursuant to N.J.S.A. 2A:49-19 of the judgments without prior notice and the opportunity to be heard did not violate defendants' right to due process of law where, as here, the judgments were entered by a court in a nation that adheres to fundamental requirements of due process.
We note that concerns about the constitutionality of the filing pursuant to N.J.S.A. 2A:49A-27 of judgments from nations that do not adhere to basic principles of due process of law may be addressed by amending the FCMJRA to require prior judicial approval of judgments of foreign countries by way of motion or a separate enforcement proceeding. We suggest that the Legislature consider such a change to avoid potential claims that the filing of judgments of certain foreign nations, without prior notice and the opportunity to be heard, may result in an unconstitutional taking of property without due process of law.
Affirmed.