63 N.J. Super. 153 (1960)
164 A.2d 179
MICHAEL KAVANAUGH, PLAINTIFF-APPELLANT,
v.
ROBERT QUIGLEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1960.
Decided October 3, 1960.
*156 Before Judges CONFORD, FOLEY and MINTZ.
Mr. Horace G. Davis argued the cause for plaintiff-appellant (Mr. Vincent T. Frank, attorney).
Mr. Edward C. Hillis argued the cause for defendant-respondent (Messrs. Marley, Winkelried & Hillis, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
In this negligence case the jury returned a verdict of no cause of action by a vote of ten jurors to one. The twelfth juror had been excused by consent during the trial. Appeal is taken from the denial of plaintiff's motion for a new trial.
It appears that after the jury was dismissed the plaintiff's attorney learned that in the course of the deliberations one or more of the jurors had informed a bailiff in whose charge they were, that they desired additional instructions from the trial judge; further, that this request was not communicated to the judge by the bailiff. Thereupon, plaintiff moved for a new trial alleging inter alia this irregularity. The motion was supported by the affidavit of Elizabeth S. DePutron, one of the jurors. She deposed that approximately three hours after the jury had retired one of the jurors requested a bailiff to inform the court that the jury wished further instructions and that, in response to this request, the jury was told by the officer in charge that "they had to bring in a verdict one way or another."
On the return of the motion the court properly considered the affidavit of the juror, see State v. Kociolek, 20 N.J. 92, *157 105 (1955), and received the testimony of Matthew Malone and John Kiely, two of the bailiffs who had been in charge of the jury. Officer Malone testified that "after about two hours * * * [t]here was a knock on the door, and one of the jurors * * * requested some further information," and he (Malone) "informed them that they should write on a piece of paper what information they desired" and that he "would see that the Court got it." He said that he did not hear from the jury again; that a written request was not given to him, and that he did not at any time advise the judge of the jury's oral request. Officer Kiely testified generally to the same effect. Neither officer appears to have been examined directly concerning the juror's version of what occurred as above set forth. It is noted that the court made no specific finding with reference to the cleavage between the versions of the bailiffs and that of the juror as to precisely what was said. Since plainly the court would have been required to grant the motion had it found that the jury had been subjected to the coercion described by the juror, we conclude that the court found the juror to have been mistaken in that regard.
A truncated recital of the reasons given by the court for its denial of the motion appears in the appendix as follows:
"The Court: I believe from the evidence before me that if either the jury or a member of the jury desired to have some further instruction, the failure to write it out indicates an abandonment of the desire for such instructions."
Preliminarily, the ambit containing the judicial functions, at both the trial and appellate levels, in circumstances such as are here presented should be surveyed. Generally speaking, the granting or denial of a motion for new trial rests in the sound discretion of the trial court and is not reviewable unless it clearly appears that the action taken constituted an abuse of discretion or, as expressed in recent cases, that it represented a manifest denial of justice. Fisch v. Manger, 24 N.J. 66, 80 (1957); Hartpence v. Grouleff, *158 15 N.J. 545, 549 (1954). See also R.R. 1:5-3. So, too, is the trial judge considered the final arbiter of disputes arising from conflicts in testimony given on the motion for new trial, just as in a non-jury trial his findings with respect to the credibility of witnesses are ordinarily regarded as conclusive. Thus, if the result reached here by the trial judge had hinged on the resolution of the factual dispute as to what the bailiff said to the jury, we would regard the court's implied acceptance of the bailiffs' version as a finality. However, as we shall point out, the area in which the court's discretion operated embraced not only factual findings but the legal effect of the same as well. It is well settled that discretion means legal discretion, in the exercise of which the trial judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly. Implicit is conscientious judgment directed by law and reason and looking to a just result. Sokol v. Liebstein, 9 N.J. 93, 99 (1952), Rossetti v. Public Service Coord. Transport, 53 N.J. Super. 293, 298 (App. Div. 1958). Consequently, if the trial judge misconceives the applicable law, or misapplies it to the factual complex, in total effect the exercise of the legal discretion lacks a foundation and becomes an arbitrary act, however conscientious may have been the judge in the performance of it. When this occurs it is the duty of the reviewing court to adjudicate the controversy in the light of the applicable law in order that a manifest denial of justice be avoided.
We think that the trial judge fell short of fully appreciating the deep implications of the uncontroverted facts, and of their impact upon legislative and judicial procedures designed to promote justice in a trial by jury. Two things are clear. The bailiff in response to the jury's request for instructions by the court, without authorization to do so, directed the jury to reduce to writing "what information they desired"; and perhaps more important, the bailiff did not then or at any time thereafter inform the court of the juror's request. To bring into focus the *159 capacity of this conduct to have influenced a verdict, or to have produced one ill advised, we need only consider the respective duties of the bailiff and the judge in relation to the deliberations of the jury and the reasons for the imposition of the same.
N.J.S. 2A:74-7 prescribes the oath to be administered to the bailiff as follows:
"You do swear, in the presence of Almighty God, that you will, to the utmost of your ability, keep every person sworn on this jury together in some private or convenient place, and that you will not suffer any person to speak to them, nor speak to them yourself, except by order of the court, and except to ask them if they have agreed on a verdict, until they have so agreed." (Emphasis added.)
Obviously the information communicated to the jury by the bailiff constituted a violation of this oath and cannot be condoned as far as the bailiff is concerned, whichever of the factual versions is credited. The only proper course open to the bailiff upon being told that the jury desired "information" from the judge was to close the door of the jury room and immediately convey the request to the trial judge. Yet one might ask: Should this misconduct of the bailiff, which the parties were powerless to prevent, vitiate a trial the fairness of which is not otherwise challenged? If we could be certain that all of the jury fully comprehended what the bailiff told them (accepting his version), understood what they were to do, and found no difficulty in agreeing upon the phraseology of their request, some justification might be found for the trial court's assumption that prior to, or in the course of, preparing the writing the jurors resolved their differences and found no need of aid from the judge. But in the given circumstances such assumption would rest upon an uneasy foundation. The very fact that the juror affiant was mistaken in her understanding of what the bailiff said points up the danger inhering in a practice of this kind. As was aptly said by Judge Jayne in Guzzi v. Jersey Central Power & Light Co., 36 N.J. Super. 255, 259 (App. Div. 1955), certification *160 denied 19 N.J. 339 (1955): "words are the materials with which ideas and mental concepts are constructed." And in the same case, in criticizing the action of the trial judge who in response to a request from a jury that they be fed and also that the testimony of a witness be sent in to them, deputized a court officer to take orders for food and to inform the jurors that they would have to rely upon their own recollection of the witness's testimony, the court observed:
"In the present instance we accept without hesitation the explanatory account of the highly scrupulous and conscientious trial judge, but the impropriety of the procedure is accentuated by the realization that neither he nor we know ad verbatim either what the jury or its spokesman said to the court attendant, or in what verbiage the officer conveyed to the jury his response.
"Conceivably the jury may have imparted to the officer cogent and determinative reasons for requesting a recitation of the testimony which he omitted to express to the judge. Unintentionally may the officer in communicating the court's denial have by his language left with the jury the implication that the testimony was not of sufficient importance to be rehearsed. To indulge in communications of this fashion is precarious." 36 N.J. Super., at p. 265.
Moreover, it is entirely possible that the state of disagreement which induced the request for instructions was expanded by further disagreement among the jurors (after the bailiff advised them) as to the precise problem or problems by which they were beset, how they should be stated, and other details important or picayune, produced by minds which were discordant in the first place. These contingencies, realistically assayed, impugn the finding by the trial court that the failure of the jury to reply to the bailiff's unauthorized and illegal advice evinced an abandonment by the jury of the request for help from the court. We may add that if there was in fact such an "abandonment" it seems no more likely to us that it was the result of accord than that it was the product of frustration.
The delicate nature of the relationship between the judge and the jury throughout the trial, particularly during *161 the deliberations of the jury, needs scarcely be expounded. At all times it is a substantial part of the judicial duty to give all possible assistance to the jury in the aid of the full discharge of its sworn duty, and during the deliberation stage the rendering of such aid upon request and ultimately receiving the jury's verdict become the sole remaining duties of the judge. See R.R. 4:40-4.
So it is that the failure of the bailiff to inform the judge that the jury found itself in need of the services which he alone was empowered to perform severed the life line of communication between the jury and the judge. As a result the jury was deprived of the help to which it was entitled and the judge was prevented from fulfilling his duty to respond to the jury in open court, consider the nature of its problem, and guide it accordingly. The imperative necessity of maintaining unfettered collaboration of the judge and jury, both acting within their respective spheres to the end that an informed verdict intelligently arrived at be returned, precludes our regarding the bailiff's omission to carry the jury's message to the judge as a non-prejudicial infraction of an administrative court procedure.
The rationale of the earlier cases in this State seems to have been that unless irregularities in procedures governing jury deliberations were affirmatively shown to have actually influenced the verdict they furnished no ground for a new trial. See Baizley v. Welsh, 71 N.J.L. 471 (Sup. Ct. 1904), Duffy v. McKenna, 82 N.J.L. 62 (Sup. Ct. 1911). This approach has given way to one which is far more realistic. In modern view the test whether an act of irregularity in this area is to be considered prejudicial and so to require a new trial is whether the irregular act had the capacity to influence the result, not whether influence in fact resulted. If the record affirmatively shows that a party is prejudiced thereby reversible error is present. But if the record fails to show whether or not the irregularity was prejudicial, as is the case here, it is presumed to be so and to be cause for reversal. It is only when the irregularity *162 is affirmatively shown to have had no tendency to influence the verdict that reversal is not required. See Panko v. Flintkote Co., 7 N.J. 55, 61 (1951); State v. Auld, 2 N.J. 426 (1949); Guzzi v. Jersey Central Power & Light Co., supra; Palestroni v. Jacobs, 10 N.J. Super. 266 (App. Div. 1950); Falzarano v. D.L. & W.R.R. Co., 119 N.J.L. 76 (E. & A. 1937).
As a footnote to our holding we observe that we are not unmindful of the hardship of a retrial imposed on the defendant through no fault on his part. However, the overriding consideration is the firmly established public policy that a new trial should be granted or refused "with a view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration of justice in general." Palestroni v. Jacobs, supra; Hutchinson ads. Consumers Coal Co., 36 N.J.L. 24 (Sup. Ct. 1872). Apart from the question of prejudice we think that in the service of this policy the court can ill afford to rationalize illegal conduct which not only is an affront to the dignity of the court, but in addition removes the trial judge from his control of the case.
Reversed.