205 N.J. Super. 417 (1985)
501 A.2d 176
FRED GOTTLOB AND REDA GOTTLOB, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
NORMA A. LOPEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 12, 1985.
Decided November 26, 1985.
*418 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and HAVEY.
Popovitch & Popovitch, attorneys for appellant (William H. McKinnon on the brief).
Goldenberg, Mackler & Sayegh, attorneys for respondents (Fredric L. Shenkman on the letter brief).
The opinion of the Court was delivered by J.H. COLEMAN, J.A.D.
The novel issue raised by this appeal is whether a loan made to a casino gambler by one other than a licensed casino operator *419 is collectible. Defendant admits that Reda Gottlob (plaintiff) loaned her $5,500 in markers obtained from the Tropicana Casino in Atlantic City. Plaintiff and her husband instituted this action for payment. Cross motions for summary judgment were filed. The trial judge granted summary judgment to plaintiffs for liability and damages. He denied defendant's motion. Defendant has appealed. We now affirm the summary judgment for liability and reverse as to damages.
The pertinent facts are taken from the affidavits and certifications in support of and in opposition to the cross motions for summary judgment. While defendant was gambling at the Tropicana Casino, plaintiff would obtain markers from the cashier in plaintiff's name and turn them over to defendant so defendant could continue to gamble. The markers totaled $5,500. Defendant used the markers as cash at the gaming tables. Defendant issued two checks to plaintiff in the total sum of $5,500 as repayment of the loans. These checks were returned for insufficient funds. Defendant alleges that she made some unspecified cash payments on the indebtedness.
Defendant argues that the debt is unenforceable because plaintiff was not authorized by the Casino Control Act, N.J.S.A. 5:12-1 et seq., to make loans for casino gambling. Prior to the November 2, 1976 amendment to the New Jersey Constitution, casino gambling was illegal throughout this State. The amendment to N.J. Const. (1947), Art. 4, § 7, ¶ 2 which added subsection (D), authorized casino gambling in Atlantic City. Before that amendment, casino and other forms of illegal gambling debts contracted in this State were unenforceable as against public policy. See Schwartz v. Battifarano, 2 N.J. 478, 483-484 (1949); cf. Caribe Hilton Hotel v. Toland, 63 N.J. 301 (1973), (enforcing a gambling debt evidenced by a check lawfully issued in Puerto Rico). The 1976 constitutional amendment and the enactment of the Casino Control Act altered our public policy regarding enforcement of gambling debts incurred while wagering in a licensed casino. The Casino Control Act regulates the extension of credit to gamblers by licensed casino *420 operators, see N.J.S.A. 5:12-101 and Resorts Internat'l Hotel, Inc. v. Salomone, 178 N.J. Super. 598, 604-605 (App.Div. 1981), but the present case involves the extension of credit by a nonlicensee to a casino gambler. Resorts did not address that issue.
Before the 1976 constitutional amendment, N.J.S.A. 2A:40-1 and N.J.S.A. 2A:40-3 made loans to facilitate unlawful gambling unenforceable. N.J.S.A. 2A:40-3 provides:
All promises, agreements, notes, bills, bonds, contracts, judgments, mortgages, leases or other securities or conveyances which shall be made, given, entered into or executed by any person, the whole or part of the consideration of which is for any money, property or thing in action whatsoever laid, won or bet in violation of section 2A:40-1 of this title, or for reimbursing or repaying any money knowingly lent or advanced to help or facilitate such violation, shall be utterly void and of no effect.
N.J.S.A. 2A:40-1 provides:
All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.
Those statutes, however, were effectively amended by the Casino Control Act which was enacted to implement the constitutional amendment. N.J.S.A. 5:12-124 exempts legalized casino gambling in a licensed casino in Atlantic City from the scope of N.J.S.A. 2A:40-1. It follows, therefore, that a loan made for casino gambling in Atlantic City is legal.
Having demonstrated that the loan in question is legal under N.J.S.A. 2A:40-1 and 3, we must reject defendant's assertion that the loan is unenforceable because it was not made in compliance with N.J.S.A. 5:12-101. The fallacy in this argument is readily apparent. The Casino Control Act does not purport to regulate the extension of credit by nonlicensees to gamblers. N.J.S.A. 5:12-101 contains no expressed or implied provision which renders unenforceable loans made by nonlicensees. N.J.S.A. 5:12-101 was enacted to maintain public confidence and trust in the integrity of casino gambling (N.J.S.A. 5:12-1b(6)) by making unenforceable unregulated loans made between casino operators and gamblers. See N.J.S.A. 5:12-101f.
*421 We agree with the trial judge that N.J.S.A. 2A:40-3 renders unenforceable only those loans which are made for the purposes of facilitating gambling prohibited by N.J.S.A. 2A:40-1. It is an admitted fact that the loan in the present case was made to facilitate legalized gambling. Not only was the loan in the present case legally made in a licensed casino in Atlantic City, but defendant made pretenses of satisfying her obligation by delivering two checks to plaintiff, one for $2,500 and another for $3,000, albeit they were never cleared by her bank. Even before enactment of the Casino Control Act, our Supreme Court articulated the public policy of this State and held that a gambling loan if valid at the place where it was contracted, would be enforced in this State. Caribe Hilton Hotel v. Toland, supra, 63 N.J. at 307-309. It would indeed be ironic for New Jersey to enforce foreign gambling loans that were made lawfully while at the same time to create a privileged sanctuary in Atlantic City for those who would play in a licensed casino with money borrowed legally from a nonlicensee. We discern no legislative intent to require such "an unreasonable, absurd or anomalous result." Citizens for Chart. Change, Essex Cty. v. Caputo, 151 N.J. Super. 286, 290 (App.Div.), certif. den. 75 N.J. 527 (1977). We simply do not see how enforcement of a legal loan would impair any interest that New Jersey seeks to protect. To the extent that Nemtin v. Zarin, 577 F. Supp. 1135 (D.N.J. 1983) construes the Casino Control Act differently, we decline to follow it. See In re The Summit and Elizabeth Trust Co., 111 N.J. Super. 154, 166 (App.Div. 1970).
We also find unpersuasive defendant's argument that the trial judge improperly relied upon any unpublished opinion which he authored. The judge referred to his earlier opinion for consistency and not as precedent. He violated neither the letter nor spirit of R. 1:36-3.
Finally, defendant argues that summary judgment as to damages was inappropriate because a genuine factual dispute exists as to the amount of repayment. We agree. Although *422 defendant is unable to say how much she has repaid, she does assert that she has repaid some of the loan. A trial is required to determine the amount of repayment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954); R. 4:46-2.
We conclude that the gambling loan is enforceable. The summary judgment as to liability is therefore affirmed. Summary judgment as to the amount due is reversed. The matter is remanded to the Law Division for further proceedings in accordance with this decision. We do not retain jurisdiction.