740 A.2d 703 (1999)
326 N.J. Super. 134
MASHANTUCKET PEQUOT GAMING ENTERPRISE d/b/a Foxwoods Resort Casino, Plaintiff,
v.
Dalip K. MALHORTA, Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided July 23, 1999.[1]
*704 Jack F. Trope, for plaintiff (Sant'Angelo & Trope, P.C., Cranford).
Michael R. Speck, Woodbridge, for defendant (Richmond, Hochron & Burns).
PERRI, J.S.C.
The within matter involves the enforcement in New Jersey of a default judgment which the plaintiff Mashantucket Pequot Gaming Enterprise d/b/a Foxwoods Resort Casino obtained against the defendant, Dalip Malhorta, in the Mashantucket Pequot Tribal Court.
Plaintiff operates the Foxwoods Casino on the Mashantucket Pequot Reservation in accordance with the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq., and tribal law. These laws permit casino gaming (known as Class III gaming) on the Mashantucket Pequot Reservation pursuant to tribal-state compact. 25 U.S.C. § 2710(d); 56 Fed.Reg. 24,966 (1991).
On or about May 7, 1998, defendant signed a credit application with plaintiff and obtained a $100,000 line of credit for use at the casino. Plaintiff acknowledges in his affidavit that the signature on the agreement is his and that he was in fact advanced $100,000 by the casino. Plaintiff alleges, and the defendant does not dispute, that the defendant subsequently presented four checks totaling $100,000 to the plaintiff, all of which were dishonored by the defendant's bank for insufficient funds.
*705 The credit application which the defendant signed contained a clause under which the defendant specifically agreed to submit to the jurisdiction of the Mashantucket Pequot Tribal Court. The agreement also contained a clause under which the defendant agreed that any credit extended by the casino would be governed by the laws of the Mashantucket Pequot Tribe. The validity and enforceability of such forum selection clauses was most recently addressed by the New Jersey courts on July 2, 1999, in the matter of Caspi v. The Microsoft Network, 323 N.J.Super. 118, 732 A.2d 528 (1999). There, our Appellate Division found that a New Jersey user's acceptance of an on-line subscriber agreement, which contained a forum selection clause submitting the user to the jurisdiction in the State of Washington, was valid and enforceable.
On or about September 11, 1998, the plaintiff instituted suit against the defendant in the Mashantucket Pequot Tribal Court under Docket Number CV-98-149 for collection of the $100,000 debt. On September 23, 1998, John Piekerz, an employee of Guaranteed Subpoena Service, Inc., served the summons and complaint upon the defendant at 115 South Telegraph Hill Road, Holmdel, by leaving the documents with a woman whom Mr. Piekerz describes as being in her 50's, with dark hair and dark eyes, approximately 5'6" and 135 pounds. Mr. Piekerz also noted in his affidavit of service that the woman was the defendant's wife. Defendant acknowledged in his deposition that he resides with his wife and children.
No response was received from the defendant with regard to the summons and complaint and on November 23, 1998, a default judgment was entered in favor of the plaintiff and against the defendant in the amount of $100,000 in the Mashantucket Pequot Tribal Court. The plaintiff subsequently filed the within action in New Jersey to enforce that judgment. It is noted that, although the defendant has attempted to interpose defenses to the original action in the within matter, the record is devoid of any suggestion that he ever sought to do so before the tribal court or made any effort to vacate the judgment in the tribal court at any time since its entry.
It is well established that Indian tribes possess "attributes of sovereignty over both their members and their territories." United States v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). The Mashantucket Pequot Tribe is a federally recognized Indian tribe, 25 U.S.C. § 1758(a), which exercises sovereign rights pursuant to its constitution and by-laws. The Tribe has enacted tribal laws and policies and has established a court system in which claims relating to the Tribe and its enterprises may be heard. See Mashantucket Pequot Tribal Council Resolution 011092-02 which states that the Tribe has "jurisdiction over the civil claims that arise on the Mashantucket Pequot Indian Reservation ... which jurisdiction extends to claims involving non-members of the Tribe as well as members of the Tribe." See Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14-15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (holding that tribal authority over the activities of non-Indians on reservations).
The Mashantucket Pequot Tribal Council, in its adoption of the Mashantucket Pequot Tribal Court Ordinance, established its court system and accepted principles of law and procedure which are based upon those used in the State of Connecticut. The Court consists of three trial court judges, one full time and two part-time local attorneys and two appellate judges, one a retired Federal District Court judge and the other a former Federal magistrate.
The plaintiff asserts, and this court accepts, that the Mashantucket Pequot Tribal Court is a bona fide court whose orders are entitled to comity in the State of New Jersey. Indeed, many state courts have granted comity to tribal court orders *706 in a variety of circumstances. In Halwood v. Cowboy Auto Sales, Inc., 124 N.M. 77, 946 P.2d 1088 (1997), the Navajo Tribal Court issued a default judgment against a non-Indian who had been sued for wrongful repossession of plaintiff's car from the Navajo reservation. The New Mexico court ruled that the New Mexico courts were available to enforce the Navajo default judgment on the basis of comity. Id. at 1093-1094. In Gesinger v. Gesinger, 531 N.W.2d 17 (S.D.Sup.Ct.1995), the Cheyenne River Sioux Tribal Court issued a $29,517.86 judgment to an Indian against a non-Indian who wrongfully converted cattle located on the reservation. The South Dakota court held that the judgment was enforceable on the basis of comity. Id. at 19-22.
More importantly, federal courts have repeatedly recognized tribal jurisdiction over activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements, even where the transaction has occurred on non-Indian land within reservation boundaries. Montana v. United States, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); See also FMC v. Shoshone-Bannock Tribes, 905 F.2d 1311 (9th Cir.1990), cert.den, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991).
In considering the enforceability of a foreign judgment, this court must determine whether the foreign court had jurisdiction over the subject matter and the person against whom judgment was rendered. The existence of the judgment is conclusive as to the validity of all other aspects of the proceedings which led to its entry. Zieper v. Zieper, 14 N.J. 551, 566-567, 103 A.2d 366 (1954); Klaiber v. Frank, 9 N.J. 1, 10, 86 A.2d 679 (1952). This is true of judgments obtained through default. DeGroot v. Camarota, 169 N.J.Super. 338, 343, 404 A.2d 1211 (App. Div.1979). Otherwise valid judgments will be enforced as long as it would not be against the public policy of New Jersey to do so.
Even before the 1976 constitutional amendment permitting gaming in Atlantic City, the New Jersey Supreme Court recognized the legitimacy of enforcing gambling debts legally incurred outside of New Jersey's jurisdiction. See Caribe Hilton v. Toland, 63 N.J. 301, 307 A.2d 85 (1973) (gambling debt incurred at San Juan casino enforceable in New Jersey as it is not against public policy). Since the 1976 amendment, it is even clearer that the enforcement of legally incurred gambling debts does not offend New Jersey public policy. See Gottlob v. Lopez, 205 N.J.Super. 417, 421, 501 A.2d 176 (App.Div.1985).
In opposition to plaintiff's motion, the defendant asserts that the tribal court lacked jurisdiction due to ineffective service of process. He alleges in his certification that he never received a copy of the original summons and complaint and supports this contention by stating that his wife does not speak English and never gave him a copy of the documents which were allegedly left with her.
The standard to be applied by the court in considering the within motion is set forth in Brill v. The Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995). When deciding a motion for summary judgment under Rule 4:46-2, this court is required to: ... consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party... are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Id. at 523, 666 A.2d 146.
Brill requires this court to "engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict", that is, "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. *707 at 533, 666 A.2d 146, citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Accepting the defendant's statements as true, and considering all inferences which can be drawn therefrom, this court finds as a matter of law that they are insufficient to defeat plaintiff's motion.
Defendant does not deny that he lives with his wife nor does he deny that his wife fits the detailed description set forth by Mr. Piekerz or that his wife was in fact served. He simply asserts that his wife never gave him a copy of the summons and complaint. Defendant's lack of receipt is irrelevant in this matter since personal service of process is effective when it is made at the defendant's dwelling home and left with a person over the age of 14. Rule 4:4-4. Simply stated, no facts have been submitted which dispute Mr. Piekerz's affidavit of service. It is noted in this regard that the defendant has submitted no certification or other sworn document from his wife in which she denies receipt of the summons and complaint. This is significant in the court's mind since it is precisely the type of proof which would be expected to be forthcoming if defendant's wife could in fact deny under oath the she received the summons and complaint.
Defendant's assertion that he lives at 115 South Telegraph Road, and that service was ineffective because it was made at 115 South Telegraph Hill Road, is equally without merit. Plaintiff has shown, and this court has confirmed, that there is no street known as South Telegraph Road in the Township of Holmdel and that the only street with a similar name is South Telegraph Hill Road. The fact that the defendant does not know his own address cannot serve as a basis for denial of plaintiff's motion.
Lastly, this court finds that no reasonable factfinder could conclude that the defendant did not voluntarily enter a binding credit agreement with the plaintiff. He has acknowledged that he signed the agreement and, more importantly, his subsequent actions of accepting plaintiff's credit and later attempting to repay it, albeit with dishonored checks, clearly shows his ratification and acceptance of the agreement. The fact that he alleges that he "does not remember much concerning the information filled out on the credit application because I was drunk" has no bearing on the validity of the agreement. He does not deny that he signed the agreement and ratified it through his subsequent conduct.
Accordingly, plaintiff's motion for summary judgment is granted.
NOTES
[1] This is an amplification of an oral bench decision.