811 A.2d 516 (2002)
356 N.J. Super. 96
PARADISE ENTERPRISES LIMITED, t/a Atlantis Paradise Island Casino, Plaintiff-Appellant,
v.
Tamir A. SAPIR, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2002.
Decided December 17, 2002.
*517 *518 Alfred J. Lechner, Jr. argued the cause for appellant (Morgan, Lewis & Bockius, attorneys; Mr. Lechner, of counsel and on the brief).
Anthony J. Laura, Newark, argued the cause for respondent (Reed Smith, attorneys; Mr. Laura, of counsel and on the brief; Jeremiah O'Leary, on the brief).
Before Judges STERN, COBURN, and ALLEY.
The opinion of the court was delivered by
ALLEY, J.A.D.
This appeal concerns plaintiff's attempt to enforce a forum selection clause that designated New Jersey as an agreed forum for determining any disputes arising from the contract of which the clause formed a part. The forum selection clause was contained in a written agreement that was signed by defendant, Tamir A. Sapir, in the Bahamas. The agreement extended a credit line to defendant to facilitate gambling by him on a "complimentary" trip to the Bahamas at a casino operated there by plaintiff, Paradise Enterprises Limited. Defendant arranged the trip with the New Jersey office of plaintiff's marketing affiliate.
Defendant received and allegedly failed to pay for $1,120,000 he incurred in gambling credit over a period of four days on this trip, and plaintiff brought suit against defendant in New Jersey after defendant failed to pay this sum. The trial court granted defendant's motion to dismiss the complaint, looking to the law of forum non conveniens. Plaintiff appealed, contending that the trial court erred in granting the motion. We agree and reverse.

I
The facts are not complicated. The dispute is between defendant, who allegedly resides in Kings Point, New York, and plaintiff, a Bahamian corporation having its principal place of business at Atlantis Paradise Hotel in the Bahamas.[1] Plaintiff's *519 affiliate Sun Marketing is registered to do business in New Jersey. It provides casino marketing services for plaintiff and maintains a branch office in Linwood, New Jersey.[2]
While defendant was in New Jersey, he was referred by a "player development" executive of the Atlantic City Hilton Hotel to Sun Marketing's office near Atlantic City. Sun Marketing arranged a complimentary trip for plaintiff to the Atlantis Paradise Hotel from April 18 through April 24, 2000. According to plaintiff, the trip was worth $149,848, and included travel to and from the Bahamas, room, food, beverages, and various gifts. Defendant allegedly contacted Sun Marketing's New Jersey office numerous times in connection with the trip.
When he arrived at the Paradise Island Casino on April 18, 2000, defendant requested a $2,000,000 line of credit and signed a written credit agreement that same day which provided in relevant part:
I/we the undersigned understand and agree
that: 1. This agreement shall be governed, construed and enforced in all respects in accordance with the laws of the State of New Jersey, which State recognizes the enforceability and validity of gaming debts. 2. The courts of the State of New Jersey shall have jurisdiction to hear and determine any claims or disputes pertaining directly or indirectly to this agreement and to any matter arising therefrom. 3. Each of the parties in this agreement hereby expressly submits and consents in advance to such jurisdiction in any action commenced by the other in the New Jersey courts.
Defendant drew upon the credit line twenty-one times in four days in April 2000, for a total amount of $1,120,000, using personal checks drawn against his Chase Manhattan Bank account. When plaintiff attempted to cash the twenty-one personal checks, however, the bank refused to honor them, alleging insufficient funds in the account. After defendant refused to pay plaintiff the money allegedly owed, plaintiff filed suit in New Jersey, invoking the forum selection clause and seeking enforcement of the gambling debt.
Defendant moved to dismiss the action on the basis of the forum non conveniens doctrine, asserting that insufficient New Jersey contacts existed to justify suit in this State. In granting the motion, the trial court noted that plaintiff was a Florida corporation and did not operate any businesses in New Jersey. (In fact, plaintiff is a Bahamian corporation). Furthermore, the court found it significant that defendant was a New York resident, signed the credit agreement in the Bahamas, and drew on the credit line with personal checks issued from a New York bank. Even though Sun Marketing had an office in New Jersey, the trial court rejected *520 plaintiff's argument that the New Jersey contacts were important, concluding that was "simply not sufficient."
With respect to the forum selection provision of the agreement, the court noted only that the case did not present "a question of whether he [defendant] signed the agreement or not, he did, and he would be bound if there was any reason why New Jersey would want to take this case[.]" The trial court found, however, that New Jersey had no interest in the case. It further concluded that to allow plaintiff's case to proceed would only congest the judicial docket in New Jersey and impose an expense on local taxpayers who would have to bear "the burden of contributing to the expense of trying imported controversies." In support of its ruling, the trial court cited Semanishin v. Metropolitan Life Ins. Co., 46 N.J. 531, 218 A.2d 401 (1966), which held that a suit filed in a New Jersey court by European citizens against a New York company was subject to dismissal on the basis of forum non conveniens.

II
We first address the standard of review. A trial court's decision whether or not to dismiss an action on forum non conveniens grounds is reviewed under the abuse of discretion standard, because the principles of forum non conveniens are equitable in nature. Kurzke v. Nissan Motor Corp., 164 N.J. 159, 165, 752 A.2d 708 (2000). Where a trial court misconceives the applicable law, however, de novo review is required because "the [trial court's] exercise of the legal discretion lacks a foundation and becomes an arbitrary act, however conscientious may have been the judge in the performance of it." Kavanaugh v. Quigley, 63 N.J.Super. 153, 158, 164 A.2d 179 (App.Div.1960). "When this occurs it is the duty of the reviewing court to adjudicate the controversy in the light of the applicable law in order that a manifest denial of justice be avoided." Ibid.; see also Cobo v. Market Transition Facility, 293 N.J.Super. 374, 382, 680 A.2d 1103 (App.Div.1996) (reversing because trial judge misapplied law). It is also firmly established that a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Tp. Committee, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
We conclude that de novo review is required here because the trial court erred as a matter of law in failing to apply the law governing forum selection clauses, and in relying instead solely on the law of forum non conveniens.[3]
We thus examine the principles of law pertaining to forum selection agreements. As a general rule, a forum selection clause is enforceable unless it is the *521 result of "fraud, undue influence, or overweening bargaining power," is "unreasonable," or violates a "strong public policy." M/S Bremen v. Zapata Off Shore Co., 407 U.S. 1, 10-15, 92 S.Ct. 1907, 1913-16, 32 L.Ed.2d 513, 520-23 (1972).
In Caspi v. Microsoft Network, 323 N.J.Super. 118, 122, 732 A.2d 528 (App. Div.), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999), we quoted with approval the trial court's observation that generally such agreements "are prima facie valid and enforceable in New Jersey[,]" and that:
New Jersey courts will decline to enforce a clause only if it fits into one of three exceptions to the general rule: (1) the clause is a result of fraud or "overweening" bargaining power; (2) enforcement would violate the strong public policy of New Jersey; or (3) enforcement would seriously inconvenience trial. Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J.Super. 58, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). The burden falls on the party objecting to enforcement to show that the clause in question fits within one of these exceptions." Ibid.

Our Supreme Court has stated that Bremen "represents the prevailing view on the enforceability of forum-selection clauses," and "has been applied by federal and state courts confronted by jurisdictional choices involving forum-selection clauses." Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 188, 680 A.2d 618 (1996). General acceptance of the validity of forum selection agreements principles is corroborated by the Restatement (Second) of Conflict of Laws § 80 (1988 rev.):
The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable.
In explaining the reasoning behind its holding in Bremen, the Supreme Court of the United States noted that, although forum selection clauses historically had been disfavored by American courts, such a view was "provincial" and had "little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets." Bremen, supra, 407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521.[4] The Court reasoned that the better approach, in "light of present-day commercial realities and expanding international trade" was to "give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause." Id. at 12, 15, 92 S.Ct. at 1914, 1916, 32 L.Ed.2d at 521-22, 523. Such an approach allowed the parties to designate a neutral forum for the resolution of any disputes, an "indispensable element in international trade, commerce, and contracting." Id. at 13-14, 92 S.Ct. at 1915, 32 L.Ed.2d at 523.
We first discussed and applied Bremen principles in Wilfred MacDonald, supra, and New Jersey courts have since followed the standard enunciated in Bremen and Wilfred MacDonald. See, e.g., Kubis, supra, 146 N.J. at 195, 680 A.2d 618 (holding *522 that forum selection clauses in franchise agreements were invalid because they violated public policy); Hendry v. Hendry, 339 N.J.Super. 326, 334-36, 771 A.2d 701 (App.Div.2001) (enforcing New Jersey forum selection clause embodied in divorce settlement agreement even though both parties no longer resided in New Jersey); Copelco Capital, Inc. v. Shapiro, 331 N.J.Super. 1, 750 A.2d 773 (App.Div. 2000) (finding forum selection clause was unenforceable because clause did not give proper notice, which the concurring opinion (id. at 11, 750 A.2d 773) stated was a violation of the "`unreasonable and unjust' standard established in Bremen for enforcement of a forum selection clause"); Caspi, supra, 323 N.J.Super. at 124, 732 A.2d 528 (enforcing forum selection clause where there was no evidence of fraud, overweening bargaining power, violation of public policy or trial inconvenience); McNeill v. Zoref, 297 N.J.Super. 213, 222-24, 687 A.2d 1052 (App.Div.1997) (declining to enforce forum selection clause because enforcement would be contrary to entire controversy doctrine); Param Petroleum Corp. v. Commerce and Indus. Ins. Co., 296 N.J.Super. 164, 170-72, 686 A.2d 377 (App.Div.1997) (finding clause was unenforceable in insurance policy because it was contrary to public policy requiring all foreign insurance companies to submit to jurisdiction in New Jersey); Shelter Sys., supra, 263 N.J.Super. at 375, 622 A.2d 1345 (enforcing forum selection clause because [n]one of exceptions to general rule [of enforceability were] present"); see also Mashantucket Pequot v. Malhorta, 326 N.J.Super. 134, 137, 740 A.2d 703 (Law Div.1999) (enforcing default judgment obtained in tribal court designated in forum selection clause in gambling credit line agreement and noting that forum selection clause was valid and enforceable).
In contrast to the standards that apply to enforcement of forum selection clauses, forum non conveniens analysis requires that a court examine a number of public interest and private interest factors in order to determine if a plaintiff's choice of forum is appropriate. Kurzke, supra, 164 N.J. at 165, 752 A.2d 708. The public interest factors are:
(1) the administrative difficulties which follow from having litigation "pile up in congested centers" rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the local interest "in having localized controversies decided at home."
[D'Agostino v. Johnson & Johnson, Inc., 225 N.J.Super. 250, 263, 542 A.2d 44 (App.Div.1988), aff'd, 115 N.J. 491, 559 A.2d 420 (1989), citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-63 (1947).]
The private interest factors are:
(1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case "easy, expeditious and inexpensive," including the enforceability of the ultimate judgment.

[Ibid.]
Even under this analysis, a plaintiff's choice of forum should not be disturbed unless the plaintiff's choice is "demonstrably inappropriate." Civic Southern Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974).
*523 In this case, the trial court first found to be lacking New Jersey contacts sufficient to justify suit in New Jersey, noting that plaintiff was a Florida (actually Bahamian) corporation without any offices in New Jersey; defendant was a New York resident; and the agreement was signed in the Bahamas. The court then addressed the matter of the forum selection clause by stating: "It's not a question of whether he [defendant] signed the agreement or not, he did, and he would be bound if there was any reason why New Jersey would want to take this case, but the fact is, we have an interest in protecting our citizens." The court further added that New Jersey had no interest in the case and to allow it to proceed would only congest the judicial docket and impose an expense on local taxpayers who would have to bear the burden "of contributing to the expense of trying imported controversies."
We are unable to accept the trial court's analysis because the court failed to consider and apply the law governing the enforceability of forum selection agreements. It did not address the principle that a forum selection clause is prima facie enforceable, nor did it address defendant's burden to defeat the agreement by proof of fraud, undue influence, unequal bargaining power, unreasonableness, or a violation of public policy, see, Caspi, supra, 323 N.J.Super. at 124, 732 A.2d 528. Instead, it ignored those considerations and looked only to the law of forum non conveniens, analyzing the public and private interest factors articulated in Kurzke, supra, 164 N.J. at 165, 752 A.2d 708, pointing to the residences of each party, and noting that allowing suit would result in administrative difficulties by contributing to New Jersey's judicial docket.
There seems to be no clear rule as to whether forum non conveniens analysis is required in a case where an express forum selection clause exists.[5] We are satisfied, however, that, to the extent the state of the law is unsettled respecting that issue, this nevertheless creates no impediment to our resolution of this appeal. Settled principles of New Jersey law with respect to forum selection agreements provide adequate protection for private and public interests, so that where such an agreement exists it is unnecessary to rely on forum non conveniens doctrine. Moreover, forum non conveniens factors are too attenuated in this case to trump the parties' agreed choice of forum. There are no private interest factors favoring plaintiff's objections to litigating in New Jersey, the very forum he agreed to accept.
Additionally, there are no public interest factors that would warrant a forum non *524 conveniens dismissal. This case appears to be reasonably straightforward. It is not a mass tort matter or consumer class action that would threaten to use inordinate amounts of our judiciary's resources. Furthermore, plaintiff seeks no relief that is repugnant to New Jersey's public policy. Indeed, enforcement of the forum selection clause in this case would be fully consistent with New Jersey's enforcement of gambling debts. See Caribe Hilton v. Toland, 63 N.J. 301, 307-09, 307 A.2d 85 (1973) (holding that a gambling debt incurred legally in Puerto Rico could be recognized and enforced by a New Jersey court because state public policy no longer strenuously opposed all wagering) (1973); see also Gottlob v. Lopez, 205 N.J.Super. 417, 421, 501 A.2d 176 (App.Div.1985) (enforcing gambling debt incurred where money was borrowed legally from a New Jersey entity not licensed under Casino Control Act), certif. denied, 104 N.J. 373, 517 A.2d 384 (1986).
Although we are satisfied that forum non conveniens factors need not be weighed in this case for the reasons we have discussed, we add that in any event, to the extent those factors might be deemed relevant, in our view no useful purpose would be served by remanding to the Law Division to consider those factors. They present an entirely insignificant issue on this record. It is beyond legitimate dispute that, after giving appropriate recognition to the forum selection clause, whereunder the parties chose New Jersey as a forum for the resolution of their disputes, which the trial court did not do, forum non conveniens factors cannot outweigh plaintiff's choice of forum, and exercising our original jurisdiction we find this as a fact. R. 2:10-5.
Accordingly, by ignoring the relevant law concerning forum selection clauses, and incorrectly making forum non conveniens considerations the basis of its decision, the trial court "misconceiv[ed] the applicable law," and thereby did not act within its discretion. Kavanaugh, supra, 63 N.J.Super. at 158, 164 A.2d 179. In such circumstances, it is an appellate court's "duty" to "adjudicate the controversy in the light of the applicable law[.]" Kavanaugh, supra, 63 N.J.Super. at 158, 164 A.2d 179.

III
The forum selection issue as presented to us arises in the context of whether New Jersey should enforce a forum selection agreement at the outset of litigation between the parties. The enforceability of such agreements, however, can also arise at the opposite end of the litigation timeline, namely, when an effort is made to enforce in New Jersey a judgment obtained in another forum on the basis of a forum selection agreement. Judgments of another state of the United States are a matter of a full faith and credit analysis under U.S. Const., art. IV, § 1, but with respect to judgments of foreign countries we look to the law as set forth in N.J.S.A. 2A:49A-16 to -24, the Foreign Country Money-Judgments Recognition Act, adopted in New Jersey in 1997. See Kam-Tech Systems Ltd. v. Yardeni, 340 N.J.Super. 414, 418, 774 A.2d 644 (App. Div.2001) (enforcing judgment issued by Israeli court). In that connection, it is noteworthy that our Legislature has specifically provided in the Foreign Country Money-Judgments Recognition Act:
2A:49A 21. Personal Jurisdiction
a. The foreign country money-judgment shall not be refused recognition for lack of personal jurisdiction if: ...
(3) the judgment debtor prior to the commencement of the proceedings had agreed expressly in writing to submit to the jurisdiction of the foreign country *525 court with respect to the subject matter involved[.]
Moreover, as a matter of international law with respect to jurisdiction in the context of forum selection agreements, we note the following principle set forth in the Restatement (Third) of Foreign Relations Law § 421 (1987):
§ 421. Jurisdiction To Adjudicate
(1) A state may exercise jurisdiction through its courts to adjudicate with respect to a person or thing if the relationship of the state to the person or thing is such as to make the exercise of jurisdiction reasonable.
(2) In general, a state's exercise of jurisdiction to adjudicate with respect to a person or thing is reasonable if, at the time jurisdiction is asserted: ...
(g) the person, whether natural or juridical, has consented to the exercise of jurisdiction[.]
Comment h to § 421 reads, with respect to forum selection clauses, that a
provision in a contract that the courts or a designated court of a state shall have jurisdiction over disputes arising out of or related to the contract generally confers on the chosen forum jurisdiction over such disputes, even if the defendant is not otherwise amenable to suit in that state.[6]
There is at present no federal statute that corresponds to our Foreign Country Money-Judgments Recognition Act, but a proposal for such a statute has been drafted by the International Jurisdiction and Judgments Project of the American Law Institute (ALI). Significantly, Comment f to § 5 in the draft of the Project's proposed federal Foreign Judgments Recognition and Enforcement Act states: "The Act favors recognition of valid forum-selection agreements[.]"[7]
With respect to the possibility of an international treaty on the recognition and enforcement of foreign judgments, as we observed in Kam-Tech, supra, 340 N.J.Super. at 421 n. 3, 774 A.2d 644, a draft of such a treaty has been under consideration by the Hague Conference on Private International Law. The working draft of this proposed Hague Convention reads in relevant part, Article 4, "Choice of court:"
1. If the parties have agreed that a court or courts of a Contracting State [i.e, a party to the treaty] shall have jurisdiction to settle any dispute which has arisen or may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction, and that jurisdiction shall be exclusive unless the parties have agreed otherwise. Where an agreement having exclusive effect designates a court or courts of a non-Contracting State, courts in Contracting States shall decline jurisdiction or suspend proceedings unless the court or courts chosen have themselves *526 declined jurisdiction[.][8] [Amended preliminary draft titled Convention on Jurisdiction and Foreign Judgments in Civil and Commercial Matters available at http:// www.hch.net/e/conventions/draft 36e.html].
The principles concerning forum selection clauses in the context of the enforcement of a foreign judgment are not dispositive of the precise issue before us. Nevertheless, they are at least collaterally significant, especially insofar as they are indicative of public policy concerning forum selection agreements. This is especially true with respect to the Foreign Country Money-Judgments Recognition Act as adopted in New Jersey and as pertinent to the perception of New Jersey's public policy concerning such agreements. In our view, the foregoing examples, which we acknowledge usually include consent to be sued in the jurisdiction in question, as is the case here, corroborate the widespread modern recognition accorded forum selection agreements executed in a foreign jurisdiction such as the Bahamas.

IV
Lastly, we examine various reasons that defendant has proffered in support of his assertion that we should not enforce the forum selection agreement covering disputes between him and plaintiff concerning the subject of the underlying litigation.
We observe first that defendant has interposed no defense to enforcement of this agreement on the ground that there is any evidence of fraud, undue influence, unequal bargaining power, or unreasonableness. He argues only that enforcement of the forum selection clause would violate public policy.[9] He asserts that New Jersey has a longstanding public policy, as enunciated in Semanishin, supra, that it "will not entertain disputes between foreigners concerning conduct outside of New Jersey," and that "public policy prohibits enforcement of the clause at issue."
We reject that contention as entirely unpersuasive. Semanishin is not dispositive, because no forum selection clause existed in that case. The same distinction also applies to another case cited by defendant, Mowrey v. Duriron Co., 260 N.J.Super. 402, 616 A.2d 1300 (App.Div.1992). The focus of Semanishin was on the private and public interest factors militating in favor of and against honoring a plaintiff's choice of forum. As we have discussed, such an examination should not precede or preclude application of forum selection principles when an express forum selection clause exists.
Defendant has essentially ignored the public policy favoring the general enforceability of forum selection clauses in advancing his insupportable claims that New Jersey will not hear cases involving conduct outside the state. Cf. Hendry, supra. We disagree that New Jersey has such a blanket prohibition. Indeed, the public and private interests test articulated in D'Agostino, supra, 225 N.J.Super. at 263, 542 A.2d 44, and Kurzke, 164 N.J. at 165, *527 752 A.2d 708, contemplate that a trial court should weigh those factors against the general rule that a plaintiff's choice of forum should be honored absent a "clear showing of real hardship or for some other compelling reason." Civic Southern Factors, supra, 65 N.J. at 333, 322 A.2d 436.
In any event, Semanishin is further distinguishable because the New Jersey contacts in this case are not insignificant and led directly to the credit agreement and the gambling trip to the Bahamas. The affidavit of the senior vice president of corporate marketing for Sun Marketing, by which defendant acknowledged at oral argument he was bound for purposes of this appeal, indicates that defendant was first approached about the trip while in New Jersey, and Sun Marketing, an affiliate of plaintiff and a Florida corporation with an office in New Jersey, arranged the trip for defendant. The affidavit further sets forth that defendant "reached out" to the New Jersey office "numerous times" regarding the Bahamas trip.
Defendant argues that the affidavit fails to demonstrate purposeful acts by defendant sufficient to demonstrate due process concerns. Moreover, he asserts that there is "no evidence" that he visited Sun Marketing in New Jersey, made phone calls to Sun Marketing in New Jersey, or took any form of affirmative acts in New Jersey.
Defendant's position is unpersuasive for two reasons. Not only does a forum selection clause exist here, but under the same agreement defendant also agreed to submit to personal jurisdiction in New Jersey. Thus, we perceive no due process concerns in this case. See Shelter Sys., supra, 263 N.J.Super. at 375, 622 A.2d 1345 (stating that court need not determine whether defendants' contacts with New Jersey were sufficient to create personal jurisdiction because forum selection clause was enforceable).
We also reject defendant's arguments to the effect that Bremen is inapplicable to this case because its holding is limited to federal admiralty courts and therefore does not apply to state courts, and because it involved a mandatory (as opposed to permissive) forum selection clause.
Although Bremen by its terms applied only to federal admiralty cases, it has been extended over the years, as Kubis has pointed out, to apply to federal non-admiralty cases, and to state courts. Kubis, supra, 146 N.J. at 188, 680 A.2d 618; see, e.g., Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541, 115 S.Ct. 2322, 2330, 132 L.Ed.2d 462, 476 (1995) (enforcing arbitration forum selection clause in international bill of lading); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622, 633 (1991) (applying forum selection clause in standardized, consumer contract); Scherk v. Alberto-Culver Co., 417 U.S. 506, 518-20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270, 280-81 (1974) (enforcing arbitration forum selection clause in securities fraud case); Seattle-First Nat'l Bank v. Manges, 900 F.2d 795, 799 (5th Cir.1990) (enforcing clause contained in stipulated judgment in bankruptcy proceeding); Pelleport Inves. Inc., v. Budco Quality Theatres, Inc., 741 F.2d 273, 279-80 (9th Cir.1984) (enforcing clause in commercial contract in diversity case); AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 156 (2d Cir.1984) (enforcing clause in partnership agreement in securities fraud action).
The ultimate answer to defendant's assertion in this regard, of course, is that Bremen is followed by the New Jersey courts. As Kubis observed, Bremen represents "the modern approach to the question of enforceability of forum-selection clauses," and the "prevailing view" on their enforcement. Kubis, supra, 146 N.J. at *528 186, 188, 680 A.2d 618. Although in Kubis the Court did not expressly state that Bremen represents the law in New Jersey, that conclusion is nevertheless inescapable given the Court's discussion of Bremen principles in that case. In Kubis, the Court held that forum selection clauses in franchise agreements were unenforceable because they violated State legislative policy protecting franchisees. Id. at 193, 680 A.2d 618. In any event, as we have already discussed, a number of our decisions have applied Bremen principles to forum selection clauses.[10]
Our conclusion is not altered by defendant's attempt to distinguish Bremen by asserting that Bremen contained a mandatory forum selection clause: "Any dispute arising must be treated before the London Court of Justice." In contrast, in this case, defendant argues, the clause is permissive because it does not require that all disputes be brought exclusively in New Jersey. It states: "The courts of the State of New Jersey shall have jurisdiction to hear and determine any claims or disputes pertaining directly or indirectly to this agreement and to any matter arising therefrom."
According to defendant, plaintiff's forum selection clause is permissive because it does not require that "all disputes be brought exclusively in New Jersey," and permissive forum selection clauses "are simply not entitled to enforcement." In our view, that is of no moment in light of the language used in the forum selection clause of the parties in this case, combined with the accompanying consent to suit in New Jersey and choice of New Jersey law. Once plaintiff filed suit here, defendant was bound by that choice, whether the agreement's language be considered mandatory or permissive.
Finally, we observe as to the effect of Bremen that although the development of the law that has followed that decision is significant, it has not erased Semanishin from the books. Semanishin is a decision of our Supreme Court, and it is neither our function nor our intention to depart from it or to limit it. It remains uncontroverted nonetheless that Semanishin did not involve a forum selection clause, and that public policy has evolved since 1966 when Semanishin was decided, so as now to permit the enforcement of forum selection clauses in the circumstances to which we have adverted. We find no persuasive reason for extending Semanishin`s public policy strictures into the realm of forum selection clauses so as to prohibit their enforcement in the ordinary case, especially inasmuch as we have recognized the existence of a particular set of legal and public policy limitations on their enforcement. See Caspi v. Microsoft Network, supra, 323 N.J.Super. at 122, 732 A.2d 528.
There is, indeed, no reason why the public policy considerations declared by Semanishin, as well as the expressed legal and public policy reasons as to enforcement and non-enforcement of forum selection clauses, cannot be considered to co-exist side by side. There may be instances when, notwithstanding the existence of a *529 forum selection agreement, our courts would not entertain certain litigation under either or both of those bodies of public policy. We cannot predict the particulars as to when or if that would occur, although we observe that one obvious possible such example might be when enforcement of a forum selection clause would have a demonstrably injurious impact on the resources of our judiciary. As the instant record shows, however, this is not such a case.
In short, we consider defendant's assertions as to the non-enforceability of his forum selection agreement to be without merit.

V
We hold that the trial court erred as a matter of law in ruling that the doctrine of forum non conveniens required it to dismiss plaintiff's complaint. Its failure to apply the relevant law on forum selection clauses was legal error, as was also its reliance on forum non conveniens law as the sole basis for disposition. By proper application of settled New Jersey law governing forum selection agreements, the clause in this case is enforceable. There is no evidence that it was obtained by fraud, undue influence, or improper bargaining power, and it is neither unreasonable nor a violation of New Jersey public policy. The case should thus proceed as agreed in the courts of our State.
We emphasize that our conclusions have been reached in the context of the record before us. The effect of a forum selection clause in a case in which there are not present New Jersey contacts to the degree that were here shown to exist, or where it can be shown that the litigation would be markedly burdensome to the resources of our judiciary, will remain to be determined in the future.
Reversed and remanded.
NOTES
[1] According to the official web sites of The Islands of The Bahamas and the United Nations, the Bahamas is a sovereign democratic state, although it retains a symbolic link to Great Britain as a member of the British Commonwealth, and since 1973 it has been one of the Member States of the United Nations. See, www.bahamas.com/culture/index.html and www.un.org/members.index.html.
[2] The relevant corporate control and affiliation of plaintiff and of Sun Marketing is as follows. Plaintiff, which operates the Paradise Island Casino in the Bahamas, is owned by Sun International Bahamas Limited (Sun Bahamas), a Bahamian corporation. In turn, Sun Bahamas is a wholly-owned subsidiary of Sun International Hotels Limited (Sun Hotels), also a Bahamian corporation. Sun Hotels was registered to do business in New Jersey in 1997, and was a holding company along with Sun International North America (Sun North America) of Resorts International Hotel, Inc., the owner and operator of Resorts Atlantic City, until its sale in April 2001.

Sun North America is licensed by the New Jersey Casino Control Commission and owns Sun Marketing, a Florida corporation with its principal place of business in Fort Lauderdale.
[3] Because of this legal error, it is unnecessary for us to determine the scope of review of a trial court's application of principles governing forum selection agreements. Such an application simply did not occur here. The scope of review as to that issue is an open question in New Jersey, but we note also that at least some federal court decisions seem to review the validity and enforcement of forum selection clauses de novo on the ground that the matter involves a question of law. See, e.g., Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 295 (3rd Cir.2001) (holding that "interpretation and enforcement of a forum selection clause is a matter of law, and we exercise plenary review over it"); Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir.2001) (stating that review of a dismissal on the basis of a forum selection clause is de novo); Bonny v. Soc'y of Lloyd's, 3 F.3d 156, 159 (7th Cir.1993) (same), cert. denied, 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994).
[4] A useful summary of the change in judicial attitude that has resulted in the present-day liberal enforcement of forum selection agreements is set forth in Gary B. Born, International Civil Litigation in United States Courts at 373-77 (3d ed.1996). Citing Bremen, the author notes, for example, that in the United States, "courts were historically hostile to forum clauses, both in international and domestic disputes[,]" and that until the mid-twentieth century, "the rule against enforcement of forum selection clauses was almost unanimously followed, by state and federal courts[.]" Id. at 373-74. But, "[s]tarting in the late 1940's, U.S. courts began to abandon the traditional rule that forum selection agreements were per se unenforceable." Id. at 374.
[5] The extent, if any, to which such an analysis is required is illustrated by the following range of decisions: AAR Int'l Inc. v. Nimelias Ent. S.A., 250 F.3d 510, 525-26 (7th Cir.2001) (holding that forum selection analysis controlled analysis of defendant's forum non conveniens motion), cert. denied sub nom, Vancances Heliades S.A. v. AAR Int'l Inc., ___ U.S. ___, 122 S.Ct. 463, 151 L.Ed.2d 380 (2001); Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 509-10 (2nd Cir.1998) (suggesting that district court should first apply Bremen standards to determine whether forum selection clause was enforceable and should only reach defendant's motion to dismiss on forum non conveniens grounds if it found that parties did not form contract containing forum selection clause); Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 37 (5th Cir.1997) (rejecting challenge to enforcement of mandatory forum selection clause and concluding that "increased cost and inconvenience [were] insufficient reasons to invalidate foreign forum-selection clauses"); but see Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 51 (1st Cir.1990) (holding that forum selection clause did not preclude consideration of forum non conveniens motion to dismiss but was one factor to be considered in ordinary forum non conveniens analysis).
[6] Although the term "state," as a matter of usage in the United States, usually refers to one the states of the union, the Restatement (Third) of Foreign Relations Law § 201 (1987) provides, "Under international law, a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in, or has the capacity to engage in, formal relations with other such entities."
[7] The draft was presented at the ALI's May 2002 Annual Meeting but has not yet been formally considered by the ALI's members. With respect to the background and appropriateness of such a statute, see Linda J. Silberman & Andreas F. Lowenfeld, A Different Challenge for the ALI: Herein of Foreign Country Judgments, an International Treaty, and an American Statute, 75 Ind. L.J. 635 (2000). Professors Lowenfeld and Silberman are the Reporters for the ALI's International Jurisdiction and Judgments Project.
[8] It is not clear that these efforts will result in a Convention that is satisfactory to the United States and a sufficient number of other governments whose assent would be important to the adoption of such a Convention.
[9] This conclusion is further supported by defendant's contention that no discovery was required to render a decision on his motion to dismiss. Defendant made this argument in response to plaintiff's contention on appeal that the trial court prematurely dismissed the complaint prior to any discovery. See Kurzke, supra, 164 N.J. at 168, 752 A.2d 708 (holding that "motion for dismissal due to forum non conveniens should not be heard unless movant has made good faith effort to obtain discovery").
[10] In light of the Full Faith and Credit Clause (U.S. Const. art. IV, § 1) and also in view this State's policy of enforcing civil money-judgments rendered by courts of other countries to the extent provided in N.J.S.A. 2A:49A-16 to -24, the Foreign Country Money Judgments Recognition Act (see Kam-Tech, supra, 340 N.J.Super. at 421, 774 A.2d 644) (explaining that "[t]he Act supplies a statutory basis for enforcing foreign judgments" in the courts of New Jersey), the result that defendant urges us to reach would be a curious one indeed. It would allow a foreign litigant to obtain a judgment in the courts of a sister state or of another country and then enforce it in our courts, but not to sue here in the first place to obtain the judgment even when the parties had agreed to such a result.